IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL ASSOCIATION OF | : | |
| SHEET METAL, AIR, RAIL & | : | No. 24-cv-1696-JMY |
| TRANSPORTATION WORKERS, | : | |
| SHEET METAL WORKERS LOCAL 19, | : | |
| | : | |
| vs. | : | |
| | : | |
| GENERAL AIRE SYSTEMS. | : | |

## MEMORANDUM

**Younge, J.**                                                         March 11, 2025

On or about April 23, 2024, Plaintiff International Association of Sheet Metal, Air, Rail

& Transportation Workers, Sheet Metal Workers Local 19 (hereinafter "Local 19") filed its

Complaint seeking to confirm an arbitration award entered by the Joint Adjustment Board.[1]

(*Complaint*, ECF No. 1.)  Thereafter, Defendant, General Aire Systems (hereinafter "General

Aire"), filed a motion to dismiss the Complaint.  (*Motion to Dismiss*, ECF No. 15.)  The Court

finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78, L.R.

7.1(f).  For the reasons explained below, after a review of the pleadings and exhibits attached

thereto, Defendant's motion to dismiss is denied.

## I.    FACTS:

Defendant General Aire is a corporation with an office and place of business in Darby,

Pennsylvania, and it is engaged in the distribution and servicing of specialty air handling

equipment and air filtration systems.  (Complaint ¶ 4.)  As such, General Aire performs air filter

---

[1]  The Joint Adjustment Board is defined in the collective bargaining agreement as entity created
by the Parties to resolve disputes that arise out of interpretation or enforcement the collective
bargaining agreement.  (*Agreement*, Article XX, §§ 1 and 2, *Complaint* Ex. A, ECF No. 1-3 page
29.)

service, grease hood cleaning, and HVAC duct cleaning.  (Decision - National Labor Relations Board, No. 04-CA-279137 (Feb 4, 2022), Complaint Ex E., ECF No. 1-7.)  Air filter service involves removing dirty air filters from air conditioning units and replacing them with clean ones.  (*Id.* page 3 note 5.)  Grease hood cleaning consists of removing and pressure cleaning grease hoods and their filters, such as those found in fast food restaurants over cooking equipment, and the reinstalling of clean appliances.  (*Id.*)  HVAC duct cleaning includes gaining access into ductwork within a building's air and heating systems, vacuuming under a large negative air pressure to remove dust and debris and then installation of sheet metal doors or patches to reestablish the integrity of the duct system to prevent leakage.  (*Id.*)

General Aire is an employer member of both the Sheet Metal Contractors' Association of Philadelphia and Vicinity ("SMCA") and the Sheet Metal Contractors' Association of Central Pennsylvania ("SMCA-Central PA").  (*Id.* page 2.)  Both the SMCA and the SMCA-Central PA act in the capacity of multiemployer bargaining agents.  (*Id.*)  Since the 1990's, General Aire has been a Party to a collective bargaining agreement with the Local 19.  (*Rossi Aff.* ¶ 4, Motion to Dismiss Ex. 2, ECF No. 15-2.)  SMCA represents General Aire in the collective bargaining agreement that it entered into with the Local 19.  (*Agreement*, Article XXI § 3.)  The collective bargaining agreement executed by the Parties specifically states, "By execution of this Agreement the Employer authorizes the Sheet Metal Contractors Association of Philadelphia and Vicinity (SMCA) to act as its collective bargaining representative for all matters relating to this Agreement."  (*Id.*)

The collective bargaining agreement establishes a grievance and arbitration procedure for settling disputes that arise "out of interpretation or enforcement" of the collective bargaining agreement.  (*Agreement*, Article XX § 1.)  To achieve these ends, it creates a quasi-judicial body

identified in the collective bargaining agreement as the Joint Adjustment Board to arbitrate disputes. (*Agreement*, Article XX § 2.) The Joint Adjustment Board is composed of an equal number of the representatives from the Local 19 and the SMCA to hear and resolve disputes. (*Id.*) In regard to the arbitration award at issue in this instance, the Joint Adjustment Board was comprised of Local 19 members Gary Masino, Bryan Bush, and Gerard Gontz in conjunction with SMCA members Dominic Bonitatis, Robert Johnson, and Jack Titlow. (*Joint Adjustment Board Hearing Minutes*, Complaint Ex. F, ECF No. 1-8.) The collective bargaining agreement further dictates that all decisions rendered by the Joint Adjustment Board will be final and binding. (*Agreement*, Article XX, § 2.) The collective bargaining agreement designates a system for appellate review by stating that "Grievances not settled [before or by a decision rendered by the Joint Adjustment Board] may be appealed jointly or by either Party to a Neutral Arbitrator selected pursuant to the Rules for Labor Arbitration of the American Arbitration Association." (*Agreement*, Article XX, § 3.)

The Parties executed the applicable collective bargaining agreement on June 1, 2019 with its term running from May 1, 2019, through April 30, 2022. (*Agreement*, Complaint Ex. B., ECF No. 1-4; *Complaint* ¶ 5.)[2] At that time, General Aire was using non-union workers on existing buildings to perform airduct, air filter and grease hood work in existing construction and Local 19 members on new or renovated construction only. (*Rossi Aff.* ¶ 9.) General Aire alleges that the Local 19 was aware of its practice and policy of using non-union workers for maintenance and service on existing equipment in finished buildings at the time the Parties entered into the applicable collective bargaining agreement. (*Rossi Aff.* ¶¶ 8, 9, 11.) However, the collective

---

[2] General Aire and Local 19 have been Parties to collective bargaining agreement since the 1990's. (*Rossi Aff.* ¶ 4.) The scope of work provision embodied in the Local 19 Agreement has remained unchanged throughout the entirety of the Parties' relationship. (*Id.*)

bargaining agreement contains a scope of work provision. (*Agreement*, Art I § 1.) The scope of work covered by the collective bargaining agreement is established in Article I, § 1, stating that it includes "all Employees of the [General Aire] engaged in but not limited to...(g) duct cleaning; (h) service work on HVAC equipment; and (i) all other work included in the jurisdictional claims of the Sheet Metal Workers' International Association." (*Id.*) A supplemental list further defining the scope of work is set forth in Article I, § 2, "for the purpose of indicating more specifically, but not by any means limiting hereto" the work covered by the collective bargaining agreement to include "serving of all fans, filters of all types...hoods...and all such or similar equipment involved in or in any way related to air handling systems." (*Id.*)

In 2020, General Aire placed an advertisement in a newspaper seeking entry-level HVAC laborers in the Philadelphia area which was seen by members of the Local 19. (*Decision - National Labor Relations Board*, No. 04-CA-279137 (Feb 4, 2022).) Thereafter, the Local 19 claimed that the work belonged to Local 19 and that General Aire should have contacted the Local 19 for laborers. (*Id.* page 4.) Around the same time in 2020, the Local 19 approached General Aire with a proposed amend to the collective bargaining agreement. (*Addendum*, Complaint Ex. B., ECF No. 15-4.) In the 2020 *Addendum*, the Local 19 sought to further clarify the scope of work outlined in the collective bargaining agreement to include HVAC duct cleaning on existing buildings and not simply in conjunction with building trades construction work on new buildings. (*Rossi Aff.* ¶¶ 11-13.) General Aire refused to sign the 2020 *Addendum*. (*Motion to Dismiss* page 3, note 3.) The Local 19 also "salted" General Aire by sending two of its members to apply for the jobs as unrepresented employees. (*Decision - National Labor Relations Board*, No. 04-CA-279137 (Feb 4, 2022) pages 3-4.) General Aire hired the "salts" as non-union, non-journeymen laborers for a couple of months. (*Id.*) The laborers reported that

they regularly performed duct cleaning and filter changing as well as some grease hood cleaning. (*Id.*)

On October 14, 2020, and October 22, 2020, Local 19 filed grievances related to General Aire's use of non-union workers for service work on existing buildings. (*Complaint* ¶ 8.) In the grievance filed on October 14, 2020, the Local 19 alleged that General Aire violated Article II, §§ 1, 5, and 12 and Article IV, § 1 of the collective bargaining agreement, by failing to employ Local 19 sheet metal workers to perform the work at issue. (*October 14, 2020 Grievance*, *Complaint* Ex. C., ECF No. 1-5.) In the grievance filed on October 22, 2020, the Local 19 alleged that General Aire violated Article II, § 1 and Article IV, § 1(b) of the collective bargaining agreement by reducing the work hours and terminating the employment of two employees for their union membership. (*October 22, 2020 Grievance, Complaint* Ex D., ECF No. 1-6.)

On June 9, 2021, the Local 19 requested that General Aire furnish it with certain information to process the October 14, 2020 Grievance. (*Decision* - National Labor Relations Board, No. 04-CA-279137 (Feb 4, 2022) pages 3-4.) On June 28, General Aire responded to the Local 19's request for information by arguing that the assignment of work identified in the Local 19's request for information – filter changes, grease hood cleaning, and/or duct cleaning – was not covered by the collective bargaining agreement as it was work performed in existing buildings, and, therefore, outside the scope of work under the collective bargaining agreement. (*Id.*) The National Labor Relations Board heard the discovery dispute between the Parties on September 28, 2021, and thereafter, entered a Decision in which it order General Aire to comply with the Local 19's request for information related to grievances under the collective bargaining agreement. (*Id.*)

On Wednesday, June 14, 2023, the Joint Adjustment Board held a hearing at the SMCA office in Warminster, Pennsylvania on the grievances filed by the Local 19.  (*Joint Adjustment Board Hearing Minutes* page 1, *Complaint* Ex. F, ECF No. 1-8.)  Minutes from the proceeding indicate that the Parties presented evidence and argument.  (*Id.*)  Thereafter, the Joint Adjustment Board found that General Aire had violated the collective bargaining agreement, and it entered a damage award in the amount of $477,000.00 with a portion of the judgment held in abeyance for a period of six years with the ability for General Aire to apply for potential expungement if certain subsequent conditions were met.  Minutes from the hearing describe the decision rendered by the Joint Adjustment Board as follows:

> After concluding deliberations, the Board found Respondent liable for $477,000.00 in damages to the industry.  As a resolution, the Board directed Respondent to pay $100,000.00 in penalties, to be distributed among the Work Assessment, Industry Fund, and Holiday Fund as appropriate.

> The remaining $377,000.00 shall be held in abeyance for a period of 6 years. If Respondent adheres to the terms and conditions of the Collective Bargaining Agreement for that time, this balance shall be expunged.

(*Id.*, page 6.)

General Aire failed to acknowledge or comply with the Decision rendered by the Joint Adjustment Board.  On October 5, 2023, the Local 19 sent copies of the grievance forms along with the June 14, 2023, decision to General Aire in an attempt to reach a resolution; however, General Aire continued to ignore the award.  (*Letter from the Local 19*, *Complaint* Ex. H, ECF No. 1-10.)  On April 23, 2024 – 314 days after the Joint Adjustment Board issued its decision – Local 19 initiated the instant action seeking to confirm the arbitration award under 301 of the Labor Management Relations ("LMRA"), 29 U.S.C. § 185.  (*Complaint*.)  General Aire filed a motion to dismiss the *Complaint*, and the Local 19 filed an opposition to General Aire's motion to dismiss.  (*Motion to Dismiss*, *Opposition to Motion to Dismiss*, ECF No. 20.)  Up and until

General Aire filed its motion to dismiss, the record is devoid of any action taken by General Aire

to challenge or set aside the award. (*Opposition to Motion to Dismiss* page 3.)  There is nothing

in the record to indicate that General Aire filed a motion to vacate, modify or correct the

arbitration award. (*Id.*)  Equally, General Aire did not seek reconsideration or clarification, and

it did not attempt to avail itself of the appellate process set forth in the collective bargaining

agreement.[3]  (*Id.*)

A.    **Defenses Asserted by Defendant at the Hearing before the Joint Adjustment Board and in this Action in its Motion to Dismiss**:

In its motion to dismiss and before the Joint Adjustment Board, General Aire raised the

issue of substantive arbitrability by arguing that it did not agree to arbitrate the underlying labor

dispute. (*Motion to Dismiss* page 11-13.)  To these ends, General Aire cites to its historic use of

labors who were not members of the Local 19 for cleaning airducts, air filters and grease hoods

on HVAC systems in existing construction. (*Id.*)  General Aire argues that the course of conduct

between the Parties establishes that it did not agree to arbitrate the underlying labor dispute. (*Id.*)

General Aire further argues that the issue of substantive arbitrability is a threshold issue that

must be decided by the Court before confirming the award entered by the Joint Adjustment

Board. (*Complaint* ¶¶ 13-14, 17; *Rossi Aff.* ¶¶ 15-17.)

In its motion to dismiss, General Aire also argues that the arbitration award entered by

the Joint Adjustment Board cannot be confirmed because it is not final and complete. (*Motion to

Dismiss* page 11-13.)  To these ends, General Aire cites to the complete arbitration rule and the

fact that a portion of the monetary award was held in abeyance with the potential for

expungement if certain subsequent conditions were met. (General Aire's Reply in Support of

---

[3]  The collective bargaining agreement provides for the right to appeal to a neutral arbitrator from any decision reached by the Joint Adjustment Board. (Agreement, Article XX § 3.)

MTD page 1, ECF No. 24.)  General Aire then argues that the award entered by the Joint Adjustment Board does not draw its essence from the collective bargain agreement.  (*Motion to Dismiss*.)  Simply put, General Aire argues that the collective bargaining agreement did not encompass the cleaning of airducts, air filters and grease hoods in existing construction; therefore, the underlying labor dispute was outside the scope of the collective bargaining agreement and its arbitration clause.  (*Id.*)  General Aire then argues that the Joint Adjustment Board exceeded its authority when it crafted a remedy that altered and rewrote the terms of the collective bargaining agreement.  (*Id.* pages 14-17.)  In this regard, General Aire cites to the requirement that it adhere to the terms of the collective bargaining agreement for a period of six years to qualify for expungement – a period of time well in excess the date when the applicable collective bargaining agreement was set to expire.  (*Id.* page 16-17.)

In its motion to dismiss, General Aire also raises an argument that it failed to advance before the Joint Adjustment Board.  (*Opposition to Motion to Dismiss*.)  It argues that the grievances filed by the Local 19 are invalid because they were filed outside the thirty (30) calendar day period prescribed by the collective bargaining agreement.  (*Motion to Dismiss* page 15.)  In support of this argument, General Aire argues that the grievances were filed several months after the Local 19 first saw the job posting for laborers, and several months after the Local 19 alleges to have become aware of the practice of hiring nonunion workers.  (*Id.*)  However, General Aire's argument about the timing of the grievance ignores the ongoing nature of their hiring practices related to nonunion workers.  Furthermore, General Aire may have waived this argument by failing to raise the issue before the Joint Adjustment Board.

## II.    STANDARD OF REVIEW:

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'"  *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

While a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, including any attached exhibits, a court may consider some evidence beyond a complaint on a motion to dismiss "including public records …, documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case." *Core Const. & Remediation, Inc. v. Village of Spring Valley, NY,* No. Civ. A. 06-CV-1346, 2007 U.S. Dist. LEXIS 73069, 2007 WL 2844870, at *2 (E.D. Pa. Sept. 27, 2007) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 n.1 and n.2 (3d Cir. 1995)) (internal citation omitted).  In this case, minutes from the hearing that was held before the Joint

Adjustment Board are essential to the dispute between the Parties and, therefore, this Court will consider the award in ruling on the instant motion.

## III.    DISCUSSION:

### A.    Substantive Arbitrability and the Question About Whether General Aire Agreed to Arbitrate the Labor Dispute About Maintenance Work on Existing HVAC Systems:

The Parties dispute whether the arbitration agreement found in the collective bargaining agreement is applicable to their dispute about whether General Aire is required to employ union members from the Local 19 to perform maintenance work on existing fully constructed HVAC systems.  General Aire argues that the question about the validity of the Parties' agreement to arbitrate claims is a threshold issue that the Court must resolve before it can confirm the decision and arbitration award reached by the Joint Adjustment Board.  The Court will assume that General Aire is correct in its assertion that the Court must resolve the threshold issue of substantive arbitrability before it confirms the arbitration award reached by the Joint Adjustment Board.  The Court will further assume that General Aire did not waive its challenge to the validity of the arbitration agreement by failing to raise this issue at an appropriate time in the litigation.  On its merits, General Aire's challenge to the validity of the arbitration agreement fails to persuade the Court to set aside the award entered by the Joint Adjustment Board.  The question of whether General Aire was required to employ union members from the Local 19 for maintenance on HVAC systems falls within the scope of the arbitration clause in the collective bargaining agreement.  Simply put, the claims at issue in this litigation meet the requirements of substantive arbitrability.

It is well settled that an agreement to resolve litigation through private "[a]rbitration is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior*

10

*Univ.,* 489 U.S. 468, 479 (1989).  Parties cannot be required to submit to arbitration when they did not agree to do so.  *AT&T Techs*, 475 U.S. 643, 648-49 (1986); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 564, 582 (1960) ("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").  The United States Court of Appeals for the Third Circuit has followed precedent set by the United States Supreme Court, holding that the very "legal foundation for labor arbitration rests on the consent of parties . . . to be bound by an arbitrator's ruling." *P&A Contr. Inc. v. Int'l Union of Operating Eng'Rs Local 825*, 19 F.4th 217, 232 (3d Cir. 2021); *see also IBEW v. Democratic Nat'l Comm.*, No. 17-cv-1703, 2018 U.S. Dist. LEXIS 8624, at *13 (E.D. Pa. Jan. 19, 2018) (courts must decide whether the parties consented to arbitration).

Courts located within the Third Circuit have held that "a party may not be compelled to arbitrate unless it has contractually agreed to do so." *Rite Aid of Pa., Inc. v. UFCW, Local 1776*, Civil Action No. 08-cv-0033, 2009 U.S. Dist. LEXIS 27825, at *9 (M.D. Pa. March. 31, 2009). An agreement to arbitrate claims is a matter of contract, and a party cannot be forced to arbitrate "unless that party has entered an agreement to do so." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009).  Thus, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co.*, 584 F.3d at 524.  "Because arbitration is a matter of contact . . . [t]o determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Under Pennsylvania law, a valid contract requires: (1) a mutual manifestation of intention to be

bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

It is a long-standing principle of federal labor law that "[an] order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Gulf Nav. Co.*, 363 U.S. at 582-583. This strong "presumption of arbitrability . . . should be dispelled only when the agreement explicitly exempts certain conduct from arbitration or when the terms of the agreement, read as a whole, clearly envision non-arbitrability." *Controlled Sanitation Corp. v. District 128,* 524 F.2d 1324, 1328 (3d Cir. 1975). Furthermore, a particular issue should not be excluded from arbitration unless "expressly excluded, or if not expressly excluded, 'only the most forceful evidence of a purpose to exclude the claim from arbitration' will suffice to exclude the claim." *Eichleay Corp. v. Int'l Ass'n of Bridge*, 944 F.2d 1047, 1058 (3d Cir. 1991), quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. at 650.

The Third Circuit Court of Appeals has identified three inquiries that guide a court's application of these principles. First, the court must evaluate whether the grievance falls within the ambit of the arbitration clause. *United Steelworkers v. Rohm & Haas Co.*, 522 F.3d 324, 331 (3d Cir. 2008); *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters*, 812 F.2d 91, 95 (3d Cir. 1987). The court may not compel arbitration of a matter beyond the reach of the clause. If the dispute implicates the arbitration clause, however, the court must perform a second inquiry to determine whether any provision of the contract expressly exempts the dispute from arbitration. *Rohm & Haas*, 522 F.3d at 331; *E.M. Diagnostic Sys.*, 812 F.2d at 95. If there is no express exemption, the third inquiry asks whether other "forceful evidence" indicates that the

parties nonetheless intended to exclude the dispute from arbitration. *Rohm & Haas*, 522 F.3d at 331; *E.M. Diagnostic Sys.*, 812 F.2d at 95. When reviewing arbitrability, the court should avoid ruling on the merits of the underlying claim. *AT&T Techs.*, 475 U.S. at 649-50; *Trap Rock Industries. Inc. v. Local 825, International Union of Operating Engineers,* 982 F.2d 884, 888 (3d Cir. 1992). The sole judicial function is to determine whether "the party seeking arbitration is making a claim which on its face is governed by the contract." *Rohm & Haas Co.*, 522 F.3d at 331 quoting *United Steelworkers of America v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960).

General Aire argues that it did not consent to arbitrate the labor dispute concerning maintenance work on fully assembled HVAC equipment in existing buildings. (*Motion to Dismiss* page 11.) In support of its challenge to the validity of the arbitration agreement, General Aire cites to the course of conduct between the Parties. (*Motion to Dismiss* page 12.) Specifically, General Aire cites to the fact that it has used maintenance workers who were not members of the Local 19 for routine maintenance on HVAC systems – cleaning airducts, air filter and grease hoods – since inception of its arrangement with the Local 19. (Rossi Aff. ¶¶ 5-6.) To better understand General Aire's defense in this regard, it is helpful to review the chronological history in the factual record set forth in the pleadings.

General Aire's argument is based its historic working relationship with union members from the Local 312 of the International Brotherhood of Teamsters (Local 312"), and General Aire's decision to hire non-union laborers to complete certain tasks. (*Motion to Dismiss* page 3.) In 1990, prior to entering into any agreement with the Local 19, General Aire entered into a collective bargaining agreement with the Local 312 of the International Brotherhood of Teamsters ("Local 312") to provide maintenance services for airducts, filters and grease hoods in existing buildings. (*Id.*) The last collective bargaining agreement entered into between General

Aire and the Local 312 ran from January 1, 2013, to December 31, 2015.  (*Id.*, *Rossi Aff.* ¶ 7.)
General Aire and the Local 312 did not renew their contractual working relationship after the
expiration of the collective bargaining agreement; instead, they ceased working together, and
General Aire hired non-union workers to clean airducts, air filters and grease hoods.  (*Rossi Aff.*
¶ 9.)

General Aire alleges that in the 1990's, when it first entered into the original collective
bargaining agreement with the Local 19, the Local 19 was aware of General Aire's working
relationship with the Local 312.  (*Motion to Dismiss* page 3.)  General Aire further alleges that
the Local 19 was aware of its use of non-union workers to clean airducts, air filters and grease
hoods on existing construction following the expiration of General Aire's relationship with the
Local 312.  (*Id.*)  General Aire contends that based on this course of conduct, the Local 19
clearly understood that the scope of the collective bargaining agreement was limited to HVAC
systems on new or renovated construction because historically the cleaning of airduct, air filters,
and grease hoods has never been considered covered work under the Local 19 Agreement.
(*Motion to Dismiss* page 12-13; *Rossi Aff.* ¶¶ 5-6.)  General Aire, therefore, argues that it would
not and did not agree to arbitrate any labor dispute concerning routine maintenance work on
existing HVAC systems.  (*Id.*)

This Court is not persuaded to set aside the arbitration award based General Aire's
challenge to the validity of the arbitration agreement.  The labor dispute in this litigation clearly
falls within the purview of the collective bargaining agreement as defined by the Scope of Work
provision contained therein which states that it encompasses "all Employees of [General Aire]
engaged in but not limited to . . . (g) duct cleaning, [and] (h) service work on HVAC equipment."
(*Agreement*, Article 1 § 1.)  The collective bargaining agreement further dictates that disputes

arising out of the interpretation of the agreement shall be submitted to arbitration pursuant to the

Grievance Procedure provision in the collective bargaining agreement which reads in relevant:

> Grievances of [General Aire] or the [Local 19], arising out of interpretation or enforcement of this Agreement, shall be settled between [General Aire] directly involved and the fully authorized representative of the [Local 19], if possible . . . Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Joint Adjustment Board having jurisdiction over the Parties. . . Grievances not settled as provided in Section 2 of this Article may be appealed jointly or by either party to a Neutral Arbitrator selected pursuant to the Rules for Labor Arbitration of the American Arbitration Association. The Arbitrator's decision shall be submitted in writing and shall be final and binding upon both parties (except as expressly limited by Section 4 of this Article). The fee of the Arbitrator and the administrative fee for the American Arbitration Association shall be borne by the losing party.

(*Agreement*, Article XX § 3.)

A plain reading of the above-cited contractual language establishes that the collective

bargain agreement encompasses cleaning of airducts and all service work on HVAC systems.

The purported longstanding relationship with the Local 312 and non-union workers which

General Aire argues established a course of conduct between itself and the Local 19 is somewhat

questionable considering the collective bargaining agreement's silence on the issue.  The

agreement makes no reference to the Local 312 or the use of non-union workers to perform any

maintenance tasks on HVAC systems or buildings.  The absence of a carveout to memorialize

the purported longstanding understanding between Parties casts doubt on General Aire's

contention that a course of conduct illustrates that the Parties never agreed to arbitrate this type

of labor dispute.

After a review of the pleadings and relevant case law, the Court finds that the grievances

heard by the Joint Adjustment Board and the award that it entered are within the scope of the

arbitration clause in the collective bargaining agreement, because a particular issue should not be

excluded from arbitration unless "expressly excluded, or if not expressly excluded, 'only the

most forceful evidence of a purpose to exclude the claim from arbitration' will suffice to exclude the claim." *Eichleay*, 944 F.2d at 1058, quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. at 650 (1986).  It is a long-standing principle of federal labor law that "[an] order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582-583.  This strong "presumption of arbitrability . . . should be dispelled only when the agreement explicitly exempts certain conduct from arbitration or when the terms of the agreement, read as a whole, clearly envision non-arbitrability." *Controlled Sanitation Corp. v. District 128,* 524 F.2d 1324, 1328 (3d Cir. 1975).

The Court will not set aside the arbitration award reached by the Joint Adjustment Board based on General Aire's argument that it did not agree to arbitrate the labor dispute at issue in this litigation – General Aire's challenge to substantive arbitrability.  General Aire's motion to dismiss falls flat in this regard and is denied.

**B.  Defendant is Barred from Raising the Defenses Asserted in Its Motion to Dismiss Because It Failed to Challenge the Joint Adjustment Board Decision in the Appropriate Time Frame:**

Beyond the threshold issue of substantive arbitrability, General Aire has waived all additional challenges that it asserts in its motion to dismiss.  Hereinabove, the Court previously addressed the issue of substantive arbitrability and found General Aire's argument unpersuasive.  Therefore, the Court now finds that the labor dispute at issue in this litigation was covered by a valid arbitration clause contained in the collective bargaining agreement.  The Court further finds that the Joint Adjustment Board rendered a complete and final arbitration award when it reached its decision on June 14, 2023.  Prior to filing its motion to dismiss on June 17, 2024, General

16

Aire took no official action to challenge or otherwise set aside the award.   Therefore, it has waived the ability to challenge the award in this proceed.

In the case *sub judice*, the Local 19 proceeds under Section 301 of the Labor Management Relations Act which is a statute that has no clear limitations period.  Therefore, the limitations period would be governed by either the Federal Arbitration Act or state law.  Both the Federal Arbitration Act and the New Jersey Arbitration Act set the limitation period for filing a motion to vacate an arbitration award at 90 days after entry of the award, 9 U.S.C § 12; NSJA § 2A:24-7.  While the Pennsylvania Arbitration Act, prescribes a 30-day period for filing a motion to vacate or modify an arbitration award.  42 Pa. C.S. § 7314(b) and 7315(a).  The Third Circuit has consistently held that in an action brought under Section 301 of the Labor Management Relations Act to confirm an arbitration award, "the failure to raise objections within the limitations period, 'which could have been raised in a motion to vacate, modify, or correct the award bars raising them in confirmation proceedings held thereafter.'" *Eichleay Corp.*, 944 F.2d at 1058, quoting *Service Employees Int'l Union, Local 36 v. Office Center Serv., Inc.*, 670 F.2d 404, 412 (3d Cir. 1982); see also *Service Employees Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89, 92 (3d. Cir. 1992); and *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Neville Chem. Co.*, 298 Fed. Appx. 209, 212 (Oct. 30, 2008) (non-precedential).  As a matter of public policy, "if a defendant has important defenses to an arbitration award, he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding." *Office Center Serv.*, 670 F.2d at 412.

General Aire's motion to dismiss was filed on June 17, 2024, over one year after entry of the award entered by the Joint Adjustment Board on June 14, 2023.  During this time period,

General Aire did not seek clarification of the award, and it did not move to vacate or otherwise set aside the award. Since General Aire's motion to dismiss was filed outside of the applicable limitation period, its challenge to the decision and award entered by the Joint Adjustment Board is untimely under any analysis applied by the Court. General Aire attempts to overcome the hurdle created by the state and/or federal limitation period by raising the complete arbitration rule. General Aire attempts to toll the limitation period by arguing that the award entered by the Joint Adjustment Board is not a compete and final arbitration award. However, the Court finds General Aire's defense based on the complete arbitration rule unpersuasive.

The "complete arbitration rule," provides that "judicial review of incomplete arbitration awards is inappropriate in all but the 'most extreme' situations." *Union Switch & Signal Div. Am.Std. Inc . v. United Elec., Radio & Mach. Workers of Am.,* 900 F.2d 608, 612 (3d Cir. 1990) (*quoting Millmen's Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1374 (9th Cir. 1987)). Under the complete arbitration rule district courts may only vacate or confirm arbitration decisions that involve a final award. *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 541-42 n. 12 (3d Cir. 1974); *Michaels v. Mariforum Shipping, S.A*., 624 F.2d 411, 414 (2d Cir. 1980) ("Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, a district court does not have the power to review an interlocutory ruling by an arbitration panel. . . it is only after an award has been made by the arbitrators that a party can seek to attack any of the arbitrators' determinations in court. . ."). Stated in the inverse a district court cannot confirm or vacate arbitration awards that are interim, or not yet final. *Id.*

In *Union Switch & Signal,* the U.S. Court of Appeals for the Third Circuit articulated the complete arbitration rule, which provides that a district court may not review an arbitration decision under § 301 that does not constitute a "final and binding award." *Union Switch &*

18

*Signal Div.,* 900 F.2d at 611 (citing *Millmen's Local 550,* 828 F.2d at 1373*).*  In *Union Switch*, 900 F.2d at 614-615, the Court held that where an arbitrator deferred to the parties to determine an appropriate remedy, and furthermore "retained jurisdiction in the event that the parties could not agree upon such a remedy," the complete arbitration rule requires that the district court not engage in determinations of whether an award should be enforced, as the arbitrator's award is not yet final.

The Third Circuit's application of the complete arbitration rule is spelled out in *Union Switch*, 900 F.2d at 614, and provides, generally, that although this Court's jurisdiction under § 301 is not necessarily limited by the absence of a final decision by Arbitrator De Truex, prudential limitations favoring a "necessity for an arbitration to be complete before a Section 301 action is entertained so that a premature action will be discouraged or, if brought, will be met with a motion to dismiss."  *Id.* at 614.  The complete arbitration rule is a prudential limit on a court's jurisdiction.  *Id.* at 613 (The complete arbitration rule is not a limit on the district court's jurisdiction; it is not a prerequisite to the exercise by the district court of the jurisdiction conferred by Section 301.).  However, many courts have declined to review "a labor arbitrator's decision under Section 301 until the arbitrator has ruled on both liability and remedies[.]" *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, Unincorporated Ass'n*, 815 F.3d 154, 159 (4th Cir. 2016) (citing *Local 36, Sheet Metal Workers Int'l Ass'n v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949-50 (8th Cir. 1992); *Union Switch & Signal Div.*, 900 F.2d at 612-14; *Millmen's Local 550*, 828 F.2d at 1375-76.  An arbitrator's decision is "final" if it is a "complete determination of every issue submitted," including the issues of liability and remedy. *Union Switch & Signal Div.*, 900 F.2d 608 (3d Cir. 1990) (*citing Millmen Local 550*, 828 F.2d at 1373.)

The decision rendered by the Joint Adjustment Board constitutes a complete, final and binding arbitration award. The collective bargaining agreement specifically states that "Except in the case of a deadlock, a decision of the Joint Adjustment Board shall be final and binding." (Agreement, Article XX, § 2.) The collective bargaining agreement further vests the Joint Adjustment Board with the power "to render such decisions and grant such relief to either Party as they deem necessary and proper, including award of damages or other compensation." (*Id.* § 4.) The Joint Adjustment Board decided all the issues submitted by the Parties and clearly defined the remedy as follows: $477,000.00 in damages, $377,000.00 of which shall be held in abeyance for a period of 6 years. If Defendant adheres to the terms and conditions of the Local 19 Agreement during that time, the balance shall be expunged.

The Joint Adjustment Board found General Aire in breach of the collective bargaining agreement, and it entered an award in the specific amount of $477,000.00. This damage award is set at a defined concrete amount with a portion of the monetary award held in abeyance for a period of six years with potential for expungement of the balance if Defendant adheres to certain terms and conditions set forth in the Collective Bargaining Agreement. In this regard, the Collective Bargaining Agreement establishes a total remedy by defining the terms and conditions that General Aire must meet to be eligible for expungement. There is nothing in the decision or award to indicate that the Joint Adjustment Board retained jurisdiction over the labor dispute described in the grievances. There is also nothing to suggest that the Joint Adjustment Board retained jurisdiction to enforce or implement the award, and it did not retain jurisdiction to enforce the Collective Bargaining Agreement.

It is the opinion of this Court that the arbitration award entered by the Joint Adjustment Board is compete and final because it resolves both issues of liability and damages. The Joint

Adjustment Board is required to do nothing more at this point in time.  The award is not, therefore, rendered incomplete based upon the mere possibility that at some uncertain date in the future, the Parties might once again submit to the arbitration system that was created by the Collective Bargaining Agreement, a disputed issue that is somehow related to the issue of expungement.  For all intents and purposes, any potential dispute related to General Aire's right to expungement would constitute a new action and not a continuation of the grievances currently at issue.  In the event of such a dispute, the Joint Adjustment Board would be called upon to resolve questions related to General Aire's adherence to the Collective Bargaining Agreement during the relevant period of time.

Since General Aire failed to challenge the arbitration award in the appropriate timeframe, all arguments raised in its motion to dismiss – beyond the threshold issue of substantive arbitrability – are waived.  In *Office Center Serv., Inc.*, 670 F.2d 404, 412 (3d Cir. 1982), defendant employer challenged the plaintiff union's motion to confirm an arbitration award by arguing, among other things, that the joint committee lacked jurisdiction to hear the grievance, the decision did not draw its essence from the collective bargaining agreement, and the award was unenforceable because it directed the defendant to take actions beyond its power and ability to do.  *Office Center Serv*. 670 F.2d at 406 n. 5.  The Court in *Office Center Serv., Inc.*, held that the defendant was barred from raising these defenses because it did not make any effort to vacate, modify, or correct the award within the relevant limitation period.  *Id*. at 412. See also *Service Employees Int'l Union Local 36 v. City Cleaning Co.,* 982 F.2d 89, 93 (3d. Cir. 1992) ("[I]f a defendant has important defenses to an arbitration award, he should raise them within the period prescribed for action to vacate rather [than] wait to raise them as defenses in a confirmation proceeding.").

Given the foregoing clarity of precedent, any argument from General Aire about the timeliness of the grievances, that the award was not drawn from the essence of the collective bargaining agreement, or the appropriateness of the remedy fashioned by the Joint Adjustment Board – whatever their merit – are all waived under the rule espoused in *Office Center Services* and *City Cleaning Co.* due to the fact that the limitation period for vacating an award had lapsed by the time the Local 19 filed its Complaint to confirm the award – 314 days after the Joint Adjustment Board reached its decision.

## IV.    CONCLUSION:

For the above reasons, the motion to dismiss filed by General Aire will be denied.


BY THE COURT:

   /s/ John Milton Younge
Judge John Milton Younge